Quail, J.
The 'plaintiff, David AY. Steiner, is the owner of a tract of land situate in Perry township, this county. Said tract of land contains about 330 acres and has located thereon a dwelling-house and 'other farm buildings. One of the defendants, Miner C. Crosslejr, is the owner of one acre of land adjoining plaintiff’s land, the same being located a distance of about two hundred feet from the dwelling-house on plaintiff’s farm. The defendant, Miner C. Crossley, has leased the acre of ground owned by him to the defendants, Guy Hennon and John AY. Hennon, for the term of five years, and said lessees propose to use said acre so leased for slaughter-house purposes. Said Ilennons propose to erect a building on said acre so leased and to use said building for a slaughter-house. They also expect to construct pens in which to confine animals awaiting slaughter, and to keep upon said premises a number of hogs to consume the offal incident to the slaughtering of animals.
The plaintiff, Steiner, filed his petition in this court alleging that said ITennons proposed to erect a slaughter-house upon said acre of land; that said defendants will, if permitted to erect and operate said slaughter-house, cause noxious and offensive smells and loud and offensive noises to escape therefrom which will taint and corrupt the atmosphere in that vicinity and which *317 will especially so corrupt it immediately in and around the dwelling-house of plaintiff as to render the same unfit for habitation. The plaintiff also avers that the drainage of said acre tract is insufficient for slaughter-house purposes as planned by said defendants; that said plans so adopted for erecting and conducting said proposed slaughter-house and stock pens are unsanitary and dangerous and'will, if permitted, render said premises a public nuisance, will make the dwelling of said plaintiff dangerous as a habitation, damaging the property to an irreparable extent. The plaintiff further alleges that he is using his farm of 330 acres for the breeding of fine stock, and especially the breeding of fine horses; that the sight, smell or presence of blood and the escape of noxious and poisonous smells from said proposed slaughter-house and premises so leased will especially damage the farm and plaintiff’s business conducted thereon to his irreparable damage and injury, for which he has no adequate remedy at law.
In a supplemental petition the plaintiff alleges that the defendant, Crossley, owner of the fee, has provided in the lease executed to the defendants Hennon, that said lessees shall at all times protect the lessor from any action in damages or other suit instituted against the defendants herein by plaintiff growing out of the use of said property for slaughter-house purposes, and that the defendants, Ilennons, as lessees of the said premises, are not financially responsible and would not be able to respond in damage should a judgment in damages be recovered against them for interfering with plaintiff’s rights and privileges by erecting and maintaining a slaughter-house on the above mentioned acre of ground.
The plaintiff secured a writ of temporary injunction directed against the defendants, G-uy Hennon and John W. Hennon, commanding them to refrain from further erecting structures on said premises or equipping said premises for the purpose of maintaining a slaughter-house or anything.incident thereto and commanding said defendants to refrain from using the said acre of land for slaughter-house purposes.
The cause was submitted to the court on the defendants’ motion to dissolve the temporary injunction heretofore issued in the *318 case. The court has made a somewhat extensive examination of the numerous authorities submitted by plaintiff and defendants.
The defendants contend that a slaughter-house is not a nuisance per se, and this contention is supported by the. weight of authority. In and of itself the business of slaughtering animals is not only a legitimate business, but a necessity as well; but a lawful business may be established in such a location that it becomes a nuisance per se. While the court believes that a slaughterhouse is not a nuisance per se, it is also of the opinion that a slaughter-house is prima facie a nuisance if carried on in certain locations. Where a slaughter-house was originally built remote-from the dwellings and habitations of men or from public places, and roads are afterwards laid out in the vicinity and dwellings subsequently erected within the sphere of' their effects, the fact of their existence prior to the laying out of the roads or the erection of the dwellings is no defense. 81 Ky. Reports, 378.
Should a business such as described in this petition become a public nuisance, the remedy should be by indictment; so, if the plaintiff in this case is entitled to the relief sought it must be by reason of the especial irreparable injury that he would suffer by reason of the action proposed by the defendants in this case. The defendants contend that should plaintiff suffer any injury his remedy is an action to recover damages. Judge Cooley, in deciding the case of Edwards v. The Allonez Mining Company, 48 Mich., 46, uses the"following language:
“If one man creates intolerable smells near his neighbor’s homestead, or by excavations threatens to undermine his house, or cuts off his access to the street by buildings or ditches, or in any way destroys the comfortable, peaceful and quiet occupation of his homestead, he injures him irrevocably. No man holds the comfort of his home for sale, and no man is willing to accept in lieu of it an award in damages. If equity could not enjoin such a nuisance the writ ought to be dispensed with altogether, and the doctrine of irreparable mischief might be dismissed as meaningless. A nuisance which affects one in his business is less in degree, but it may. still be irreparable, because it may break up the business, destroy its good will and inflict damages which are incapable of measurement because the elements of reasonable certainty are not to be obtained for their computation. Even in the case of unoccupied land a, nuisance may threaten an *319 irreparable injury, whore it is devoted in its purchase to some special use, or where the person causing the injury is irresponsible. ’ ’
So in the case of Cline v. Kirtbridge, reported in Volume 22 Ohio C. C. Rep., the third circuit court, Judge Day rendering the decision, uses the following language:
“Under the law every person is entitled to have and enjoy his property in peace and security, and to that end an owner may prosecute and carry on upon his premises such legitimate business as he chooses; but, in doing this, regard must be had to the similar rights of an adjoining owner or proprietor, and neither can be allowed to so use his property as to greatly impair or entirely destroy the reasonable and proper use and enjoyment of the other. They must be mutually good citizens and have proper regard for the rights of each other. For little transgressions, small trespasses and slight deflections from the line of good citizenship, the law affords an' adequate remedy, but for the larger sins of commission — for continuous trespassing and injimy, for wrong acts and conduct threatened, resulting in great or irreparable injury not susceptible in being accurately measured or adequately compensated in damages — it is proper to invoke the great remedy of injunction. ’ ’
In the ease of In re Hong Wah, District Court, Northern District of California; reported in 82 Fed. Rep., 623, the second syllabus reads:
“The ownership of property, no matter where located, carries with it the right to use, and to’ permit the use of, such property in the prosecution of any legitimate business which is not a nuisance in itself; and the exclusion of any such lawful business from a particular locality can only be justified upon the ground that the health, safety, or comfort of the surrounding community requires such exclusion. ’ ’
In that ease the business attempted was a public laundry in the-city of San Mateo, California, which city had enacted an ordinance prohibiting the establishment of public laundries within the limits of a certain portion of said city, and the court held that said ordinance conflicted with Section 1 of the Fourteenth Amendment to the Constitution of the United States.
In the case of Catlin et al v. Valentine, 9 Paige N. Y. Rep., 575, it is held that — “To constitute a nuisance it is not necessary that the noxious trade or .business should endanger the *320 health of the neighborhood. It is sufficient if it produces that which is offensive to the senses and which renders the enjoyment of life and property uncomfortable.”
This was an action to restrain the defendant, Valentine, from erecting a slaughter-house at the intersection of Second avenue and Fifth street in the city of New York, and the proposed location would probably affect many persons who occupied or owned dwellings in the vicinity, while in the present case plaintiff alone may suffer special damage and irreparable injury. It is - true that the courts, as a general rule, have held that even though a building proposed to be erected might be a nuisance, still a court of equity could not interfere, but would leave a party to his action on the case. 40 Ill., 48.
So the general rule “that where the thing complained of is not a nuisance per se, but may become so according to circumstances, and the injury apprehended is eventual or contingent, equity will not interfere. The presumption is that a person entering into a legitimate business will conduct it in a proper way; so that it will not constitute a nuisance; and so, where a building in course of erection, or about to be erected, will not of itself constitute a nuisance, equity will not enjoin it on the ground that it may be used for a purpose which will make it a nuisance. If the building is in fact used in such a manner as to create a nuisance, its use for such.purpose will then be enjoined.” Cited in the case of Chambers v. Cramer, 54 L. R. A., 547, and taken from Id Ency. of Pleading & Practice, 1129.
In same case, citing from the case of Hough v. Doyleston, 4 Brewster (Pa.), 333, it was held that in order for equity to enjoin a private nuisance “the danger must be intending and imminent and the effects certain, not resting on hypothesis or on conjecture, but established by conclusive evidence. If the injury is doubtful, eventual or contingent, or if the matter complained of is not ipso fado a nuisance, an injunction will not be granted.” So, “in cases of prospective nuisance a court of equity will not interfere unless the damage to be apprehended will be serious, nor when balancing the inconveniences or injuries, greater injury will be inflicted by granting than by refusing an injunction. ’ ’
*321 The property rights of plaintiff and defendants must both be respected. This court must assume that the defendants Hennon intended to conduct the business proposed in a legitimate and proper manner; so that, if equity should restrain the erection of the proposed plant for slaughter-house purposes, it must do so solely on account of the proposed location and by reason of the proximity of the said location to the plaintiff’s house.
This court, of its own motion, has visited the proposed location in order that, by a view of the said premises, it might be better able to understand the evidence adduced to the court in this case. The evidence shows that this acre of ground adjoins the barn lot of the- plaintiff. The south line of said acre being only 200 feet from the dwelling located on plaintiff’s farm and only a few feet (probably 50) from the barn on said premises. The evidence further shows plaintiff to be engaged in building another barn about 600 feet east of the proposed location for a slaughter-house; but the court does not consider this fact as of any weight in the case for the reason that the distance is too far, in the opinion of the court, for plaintiff to suffer irreparable injury by reason of this proposed slaughter-house being erected within 600 feet of his proposed barn.
Therefore the sole question for the court to determine is, whether or not the said proposed slaughter-house will be so located as to irreparably injure plaintiff by reason of its proximity to the dwelling-house and barn at present upon plaintiff’s premises A slaughter-house, not being a nuisance per se, unless in certain locations and surroundings, and it being the presumption of the law that a person engaged in a legitimate business will conduct the same properly, the court in this instance, in order to justify the remedy sought by the plaintiff in this case, must hold that said proposed slaughter-house is a nuisance per se to plaintiff, located as the evidence in this case shows the proposed erection to be.
.Defendants admit their intention of building said slaughterhouse; that they expect to slaughter here animals, consisting of calves, cattle and hogs, of the value of twenty thousand dollars yearly; that they expect to keep from fifteen to twenty-five hogs upon said premises at all times fattening upon the offal *322 from said proposed slaughter-house, and that they propose to cook said offal in kettles or vessels before feeding same to said hogs. Part of the surface drainage of said acre passes south toward plaintiff’s dwelling-house. Plaintiff’s testimony is to the effect that the cooking of offal and feeding the same as defendants admit they propose to do, will be productive of noisome and offensive smells and odors; that the smells and odors so arising is dangerous to the health of the occupants of said dwelling-house ; that the smell of blood from the slaughter of animals, if permitted in this location, will injure plantiff’s business of breeding and raising fine stock, and especially horses; that the smell of blood is a well known and well recognized cause of abortions in brood mares; that the slaughter-house operated in a recognized sanitary manner would still produce that result and irreparable injury if located in such proximity to the buildings of plaintiff as is proposed by the defendants.
Ridenour & Half MU, for plaintiff.
Willigm Klinger, for defendants.
Carefully considering all the evidence introduced in this case, the location of the proposed -building with reference to the dwelling-house and barn of the plaintiff, the kind of business the defendants propose to conduct if not enjoined, the court is of the opinion that the operation of a slaughter-house upon the premises described in the petition would, even if conducted in a sanitary manner, interfere with the plaintiff in the comfort and enjoyment of his property and work an irreparable injury to him — an injury for which the plaintiff would have' no adequate remedy at law.
Holding these views, the court will overrule the motion of the defendants to dissolve the temporary injunction heretofore issued and allow exceptions to the defendants.